UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY L. McLEAN,
    *Plaintiff*,

    v.                             No. 3:21-cv-552 (JAM)

CITY OF NEW HAVEN *et al.*,
    *Defendants*.

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Johnny L. McLean is a prisoner in the custody of the Connecticut Department of Correction. He has filed a federal civil rights complaint *pro se* and *in forma pauperis* against the City of New Haven and several of its police officers. He alleges that they violated his constitutional rights when they searched him and his car, resulting in the seizure of evidence that was used to convict him. I will allow McLean's Equal Protection claim to go forward against one of the officers.

**BACKGROUND**

McLean names as defendants the City of New Haven and four New Haven police officers.[1] According to the complaint, McLean went to a restaurant with his daughter and drove home.[2] After he took out his house keys to unlock the front door, the defendant police officers "came out of nowhere" and called McLean "back down to the street" and "back to my car."[3] The officers told McLean that he had failed to signal a turn on an earlier block, and that they believed the tint on his windows was too dark.[4] McLean protested that his windows complied with the

---

[1] Doc. #1 at 1.
[2] *Id.* at 3 (¶¶ 7–8).
[3] *Id.* at 3 (¶ 10).
[4] *Id.* at 3 (¶ 11).

1

law and invited the officers to verify that fact with a glass tint measurement gauge.[5]

But one of the officers responded "I don't have time to play games with you."[6] He and the other officers immediately proceeded to search McLean's pants pockets and his car.[7] During the search, McLean asked the officers why they were conducting searches instead of using the tint measurement gauge.[8] They replied that "this is only a stop and frisk" and "you['re] in the wrong place son."[9]

McLean is a black male. He alleges that he had broken no traffic laws, had legal windows, had a valid license and registration, and had not been reported as being involved with any other crime.[10] Nevertheless, he states that the officers' search revealed a pistol in his car and marijuana in his pocket.[11]

McLean was convicted of drug and weapon offenses on February 3, 2020.[12] On November 6, 2020, McLean appealed his criminal convictions.[13] According to the State of Connecticut Judicial Branch website, the Connecticut Appellate Court dismissed McLean's appeal on January 12, 2022, after his appointed counsel filed an *Anders* motion to withdraw and after McLean failed to comply with the briefing schedule.[14]

McLean has filed this federal court civil rights complaint alleging several counts for

---

[5] *Ibid.*
[6] *Id.* at 3–4 (¶ 11).
[7] *Id.* at 4 (¶ 11).
[8] *Id.* at 4 (¶ 12).
[9] *Id.* at 4 (¶ 13).
[10] *Id.* at 5 (¶ 15).
[11] *Id.* at 6 (¶ 17).
[12] *Id.* at 6 (¶¶ 16–17).
[13] McLean's criminal docket is NNH-CR17-0173253-T. The State of Connecticut Judicial Branch website for this docket number reflects that McLean was convicted on four different drug and firearms charges for which he was sentenced to an effective term of six years of imprisonment. *See* State of Connecticut Judicial Branch, Criminal/Motor Vehicle Convictions Case Detail (NNH-CR17-0173253-T), available at https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Disp (last accessed May 23, 2022).
[14] *See* docket sheet and motion for extension of time dated May 21, 2021, *State of Connecticut v. McLean*, AC44373, available at https://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=74348&Type=PartyName (last accessed May 23, 2022).

relief and seeking damages and declaratory relief. Count One alleges claims for racial discrimination in violation of 42 U.S.C. § 1981 and § 1982. Count Two alleges an unlawful search without probable cause in violation of the Fourth and Fourteenth Amendments as enforceable under 42 U.S.C. § 1983. Count Three alleges racial discrimination in violation of the Equal Protection Clause as enforceable under 42 U.S.C. § 1983.[15]

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."[16] If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

---

[15] Doc. #1 at 9–11.
[16] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

### *Count One—Sections 1981 and 1982*

In Count One, McLean alleges that the defendants violated 42 U.S.C. §§ 1981 and 1982.

But this claim does not fit his allegations. Section 1981 guarantees the rights "to make and

enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws

and proceedings for the security of persons and property" free from racial discrimination. Section

1982 guarantees citizens the right "to inherit, purchase, lease, sell, hold, and convey real and

personal property" free from racial discrimination.

To bring a claim under these laws, McLean must allege that the defendants interfered

with one of the rights mentioned in these statutes. *See Brown v. City of Oneonta, New York*, 221

F.3d 329, 339 (2d Cir. 2000) (§ 1981); *Okudinani v. Rose*, 779 F. App'x 768, 771 (2d Cir. 2019)

(§ 1982). McLean, however, does not allege that the defendants stopped him from signing a

contract, selling property, or doing any of the other activities protected under § 1981 or § 1982.

Thus, he has failed to plausibly allege a claim under those laws.

### *Count Two—Fourth Amendment*

In Count Two, McLean alleges that the defendants violated his Fourth Amendment rights

by searching him without probable cause. But this claim is precluded under the doctrine of *Heck

v. Humphrey*, 512 U.S. 477 (1994). There, the Supreme Court held that in order for a plaintiff "to

recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm

caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983

plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged

by executive order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486–87.

Thus, if a determination favorable to a plaintiff in a § 1983 action "would necessarily imply the

invalidity of his conviction or sentence," *id*. at 487, a plaintiff must first prove that the conviction

or sentence has been separately invalidated before he can seek to recover damages under § 1983.

*See also Smalls v. Collins*, 10 F.4th 117, 133–34 (2d Cir. 2021) (describing scope of *Heck v.*

*Humphrey*).

As McLean alleges in his complaint, the police unlawfully searched his person and his

car, finding incriminating evidence and resulting in a prosecution, a trial, and a criminal sentence

that he is now serving in state prison. If he were to prevail on his Fourth Amendment claim in

this civil lawsuit, then this would necessarily imply the invalidity of his resulting criminal

convictions. *See, e.g.*, *D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) (applying

*Heck v. Humphrey* to preclude § 1983 claims because "asserting that D.S. was unlawfully seized,

or coerced into confessing, or denied effective counsel in violation of constitutional rights

advanced under § 1983 necessarily implies that his assault conviction was unlawfully obtained");

*Warren v. Fischl*, 674 F. App'x 71, 72 (2d Cir. 2017) (applying *Heck v. Humphrey* to preclude

prisoner's claim against police officers and prosecutors for unreasonable search and seizure and

fabrication of evidence where claims would necessarily imply invalidity of convictions that had

not been reversed or vacated on appeal); *McKay v. E. Hartford Police Dep't*, 2017 WL 4247383,

at *3 (D. Conn. 2017) (applying *Heck v. Humphrey* to preclude prisoner's claims for false arrest,

malicious prosecution, and unlawful search and seizure).

This is not to suggest that the rule of *Heck v. Humphrey* always bars a claim for unlawful

arrest or seizures simply because the plaintiff was later subject to a conviction that has not been

reversed or vacated. As the Second Circuit has made clear, however, the rule of *Heck v.*

*Humphrey* properly applies if "the evidence underlying the conviction was the fruit of such

unlawful actions." *Fifield v. Barrancotta*, 353 F. App'x 479, 481 (2d Cir. 2009). That is what the

complaint alleges here: that McLean was convicted on the basis of evidence that was the fruit of an unlawful stop and search of his person and car.

To be sure, McLean claims that he "is not challenging his conviction."[17] But the relevant issue for purposes of *Heck v. Humphrey* is not whether a plaintiff *explicitly* seeks to challenge or overturn his convictions. It is whether the plaintiff's challenge would *necessarily imply* the invalidity of a criminal conviction that has not been reversed or vacated. McLean alleges that he "is challenging the illegal procedures which initiated the search" that led to his convictions.[18] Because his convictions have not been reversed or vacated, McLean's challenge—as presently framed in his complaint—falls within the scope of the rule of *Heck v. Humphrey*.

Similarly, McLean alleges that the motor vehicle infractions against him were dismissed.[19] But the relevant issue is not whether *some* of the charges or infractions against him have been invalidated; rather, it is whether his challenge would necessarily imply the invalidity of at least one criminal conviction that has *not* been invalidated. *See, e.g.*, *Warren*, 674 F. App'x at 72–73 (applying *Heck v. Humphrey* despite reversal on appeal of some of the counts of convictions where plaintiff's challenge would nonetheless necessarily imply the invalidity of other convictions that had not been reversed). In short, as presently alleged, McLean's Fourth Amendment claim is precluded by *Heck v. Humphrey* because it would necessarily imply the invalidity of one or more of his convictions.

### Count Three—Equal Protection

Finally, McLean alleges in Count Three that the officers searched him because of his race, in violation of the Equal Protection Clause. "The Equal Protection Clause … commands

---

[17] Doc. #1 at 6 (¶ 17).
[18] *Ibid.*
[19] *Id.* at 6 (¶ 16).

that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As relevant here, "[t]o state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race.'" *Thompson v. Quiros*, 2021 WL 5301240, at *5 (D. Conn. 2021) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

McLean claims that the officers decided to search and seize him because he is black. Most of his allegations, however, are conclusory. For example, he alleges that "the defendants['] actions [were] done out of hatred because … [he is a] black male," but this is just another way of stating the elements of his claim.[20] Yet McLean has more specific allegations against one of the defendants. He alleges that during the search, Officer Salvati told him that "you['re] in the wrong place son."[21] By "wrong place," Salvati may have been alluding to McLean's presence in a majority-black neighborhood. And he plausibly meant "son" as a pejorative. *Cf. Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (explaining how calling someone "boy" can show racial bias). Thus, for the purposes of this initial review order, and assuming as I must that McLean is telling the truth, I find that he has plausibly alleged that Salvati searched and seized him because of his race.

It is unclear whether McLean's Equal Protection claim against Salvati is precluded by *Heck v. Humphrey*. Some judges have suggested that, like with a Fourth Amendment violation, evidence collected in violation of the Equal Protection Clause should be subject to the

---

[20] Doc. #1 at 11.
[21] *Id.* at 7 (¶ 18).

7

exclusionary rule. Judges Lohier and Carney, for example, have concluded in a concurring

opinion that "[c]riminal defendants must be able to raise the issue of selective enforcement

where the presence of racial bias is unmistakable, and they should not have to do so in a separate

civil proceeding." *United States v. Weaver*, 9 F.4th 129, 159 (2d Cir. 2021) (en banc) (Lohier, J.,

concurring). If a violation of the Equal Protection Clause is grounds to suppress evidence at a

criminal trial, then *Heck v. Humphrey* could apply to McLean's Equal Protection claim if shown

that the suppression of this evidence would necessarily imply the invalidity of McLean's

conviction.

On the other hand, the Sixth Circuit has ruled that "we are aware of no court that has ever

applied the exclusionary rule for a violation of the Fourteenth Amendment's Equal Protection

Clause and we decline [the defendant's] invitation to do so here." *United States v. Nichols*, 512

F.3d 789, 794 (6th Cir. 2008). If a violation of the Equal Protection Clause does not allow for

suppression of evidence at a criminal trial, then *Heck v. Humphrey* would not apply to McLean's

Equal Protection claim because the success of his claim would not necessarily imply the

invalidity of his conviction. *See Waller v. Russell*, 2019 WL 6521775, at *4 n. 4 (declining to

apply *Heck v. Humphrey* to Equal Protection claim), *report and rec. adopted*, 2019 WL 6499452

(W.D. La. 2019).

In light of this uncertainty about the predicate for the application of *Heck v. Humphrey*, I

am not prepared for purposes of this initial review order to conclude that *Heck v. Humphrey* bars

McLean's Equal Protection claim. I would be prepared, however, to consider the issue in full in

the event that the parties choose to raise it at a later stage of this action.

Besides the officers, McLean has also sued New Haven. I will dismiss the Equal

Protection claim against the city. Under *Monell v. New York City Dept. of Social Servs.*, 436 U.S.

658 (1978), a municipality may be vicariously liable for unconstitutional police misconduct only if the misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal officers. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (describing scope and limitations of municipal liability under *Monell*).

But McLean has not pleaded any specific facts (as opposed to legal conclusions) to point to any specific municipal policy or custom, to suggest that New Haven acted in deliberate indifference to constitutional rights, or to allow an inference that any policy or custom caused any of the alleged violations of McLean's constitutional rights.

McLean alleges in a conclusory fashion only that the "City of New Haven had approved of its police officers to use profiling racial tactics against its citizens to initiate illegal searches, based on fabricating charges of traffic stops."[22] But this allegation simply repeats the elements of a *Monell* claim and the underlying constitutional violation. It does not give any specific facts to substantiate the existence of a municipal policy. So McLean has failed to bring a plausible *Monell* claim.

I will likewise dismiss McLean's claim against Salvati in his official capacity. "A claim against a municipal officer in his or her official capacity is, in essence, a claim against the city for which he or she works." *Atkinson v. Norwalk Police Dep't*, 2019 WL 108877, at *2 (D. Conn. 2019) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Because McLean has not alleged facts sufficient to state a claim for municipal liability, he has also failed to state a factual basis for a claim against the individual police defendants in their official capacities. *See ibid.*

---

[22] Doc. #1 at 6 (¶ 16).

CONCLUSION

For the reasons set forth above, the Court enters the following orders:

(1) McLean's Equal Protection claim (Count Three) shall proceed against Salvati in his individual capacity. The remaining claims and defendants are DISMISSED.

(2) If the plaintiff believes there are additional facts the plaintiff can allege that will overcome any of the deficiencies identified in this ruling, then the plaintiff may file a proposed amended complaint within 30 days of this order.

(3) The Clerk shall verify the current work addresses for defendant Salvati with the New Haven Police Department, mail a waiver of service of process request packet containing the complaint to him at the confirmed address within twenty-one (21) days of this Order, and report to the Court on the status of the waiver requests by not later than the thirty-fifth (35) day after mailing. If the defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The defendant shall file his response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the Corporation Counsel for the City of New Haven.

(6) The discovery deadline is extended to six months (180 days) from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) The deadline for summary judgment motions is extended to seven months (210 days) from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e. a motion to dismiss or a motion for summary judgment) within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendant or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven, Connecticut this 23rd day of May 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer

United States District Judge